FILED
 2012 Dec-20  PM 01:28
 U.S. DISTRICT COURT
 N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **MARK ANTHONY BAKER,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action Number |
| | ) | **5:12-cv-676-AKK** |
| **MICHAEL J. ASTRUE,** | ) | |
| **COMMISSIONER OF SOCIAL** | ) | |
| **SECURITY** | ) | |
| **ADMINISTRATION,** | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Plaintiff Mark Anthony Baker ("Baker") brings this action pursuant to sections 205(g) and 1631(c)(3) of the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). Doc. 1. This court finds that the Administrative Law Judge's ("ALJ") decision - which has become the decision of the Commissioner - is not supported by substantial evidence. Therefore, the court will **REVERSE** and **REMAND** the decision denying benefits to the ALJ for him to reach a disability determination based on the medical record and, if needed, to consult additional physicians to assess Baker's condition.

## I. Procedural History

Baker filed his applications for Title II disability insurance benefits ("DIB") and Title XVI Supplemental Security Income ("SSI") on November 17, 2009, alleging a disability onset date of February 28, 2007, due to depression, high blood pressure, and suicidal ideation. (R. 113-124, 154). After the SSA denied his applications on March 23, 2010, Baker requested a hearing. (R. 54-63, 64-66). At the hearing on April 18, 2011, Baker was 43 years old with an eighth grade education and past relevant work as a poultry hatchery worker and pallet builder. (R. 37, 45, 155, 158). Baker has not engaged in substantial gainful activity since his alleged onset date. (R. 154).

The ALJ denied Baker's claims on May 13, 2011, which became the final decision of the Commissioner when the Appeals Council refused to grant review. (R. 1-4, 11-26). Baker then filed this action pursuant to 42 U.S.C. § 1383(c)(3). Doc. 1.

## II. Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988);

*Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III. Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to

engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f).  Specifically, the Commissioner must determine in sequence:

(1)  whether the claimant is currently unemployed;

(2)  whether the claimant has a severe impairment;

(3)  whether the impairment meets or equals one listed by the Secretary;

(4)  whether the claimant is unable to perform his or her past work; and

(5)  whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other

than step three, leads to a determination of 'not disabled.'" *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)).  "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do."  *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

## IV.  The ALJ's Decision

In performing the five step analysis, the ALJ initially determined that Baker met the insured status requirements of the Act through September 30, 2013. (R. 16).  Next, the ALJ determined that Baker has not engaged in substantial gainful activity since February 28, 2007, and, therefore, met Step One.  *Id.*  The ALJ found next that Baker met Step Two because he suffered from the severe impairments of "chronic headaches and back pain."  *Id.*  The ALJ then proceeded to the next step and found that Baker failed to satisfy Step Three because he "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments."  (R. 17).  Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the ALJ proceeded to Step Four, where he determined that Baker "has the residual functional capacity [RFC] to perform medium work."  *Id.*  In light of this RFC and the vocational expert's testimony, the ALJ determined that Baker is "capable of performing the requirements of his past relevant work as a hatchery worker... and

pallet builder...both of which are medium in exertional requirements." (R. 21). Consequently, the ALJ found that Baker "has not been under a 'disability,' as defined in the Social Security Act, from February 28, 2007, through the date of this decision." (R. 22).

## V.  Analysis

The court turns now to Baker's contentions that the ALJ failed (1) to give appropriate weight to treating licensed clinical social worker Susan Brunson's opinion, and (2) to properly consider Baker's depression and anxiety as "severe impairments." *See* doc. 8 at 4-14.  The court addresses each contention in turn.

### A. <u>Failure to give appropriate weight to licensed clinical social worker's opinion</u>

Baker argues that the ALJ should have applied the "treating physician rule" and given the opinion of licensed clinical social worker Susan Brunson substantial weight.  Doc. 8 at 7. "It is well-established that 'the testimony of a treating physician must be given substantial or considerable weight *unless* "good cause" is shown to the contrary.'" *Crawford v. Comm'r of Social Security*, 363 F.3d 1155, 1159 (11th Cir. 2004) (emphasis added) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)); s*ee also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  However, licensed clinical social workers are not "acceptable

medical sources" as defined in 20 C.F.R. § 416.913(a), and, thus, are not entitled to the automatic substantial or considerable weight given to treating physicians. *See* SSR 06-03p. Instead, licensed clinical social workers are recognized as "other sources" whose testimony cannot establish the existence of a medically determinable impairment, but may instead provide insight into the severity of a claimant's impairment or how it affects his ability to function. *See* SSR 06-03p; 20 C.F.R. §§ 416.913(d) and 404.1513(d). Consequently, the ALJ is required to consider all the relevant evidence in the record and must analyze, including assigning weight, the opinions issued by "other sources" such as licensed clinical social workers. *See* SSR 06-03P; 20 C.F.R. §§ 404.1545(a)(1), (b); 20 C.F.R. §§ 416.945(a)(1), (b).

Turning now to the facts here, the ALJ outlined the correct standard for "other sources," but failed to apply it properly:

> Ms. Brunson has worked extensively with the claimant but she is not one of the medical sources cited in the Regulations. All opinions, whether medical or non-medical, may be considered by the undersigned but there is no requirement that the opinion of a source who is not an acceptable medical source be accorded controlling or substantial weight in the process of a sequential evaluation. Insofar as her opinion is consistent with other evidence in the record, the undersigned will consider it in assessing the claimant's limitations. However, the determination as to whether the claimant is 'disabled' is reserved to the Commissioner of Social Security.

(R. 21). Unfortunately, the ALJ's opinion stopped short and failed to state a basis for this court to assess properly whether it is supported by substantial evidence. Specifically, the ALJ failed to articulate how he evaluated Brunson's opinion and why he rejected it. Moreover, while the ALJ noted the other medical evidence in the record, he also failed to articulate whether he considered this evidence, what weight, if any, he gave to the various medical opinions, and whether he found Brunson's opinion consistent or inconsistent with any of the other evidence. *See* (R. 16-22). This failure to meaningfully discuss the medical evidence leads the court to conclude that a remand is warranted to ensure that the ALJ discusses all the evidence and adequately supports his RFC and disability determinations.

A remand is especially warranted because the medical evidence lends support to Brunson's findings and suggests that the ALJ should have considered Brunson's findings in assessing Baker's limitations. As a threshold matter, the court notes that Brunson, a licensed clinical social worker at Cullman Quality Heath Care Clinic where Baker has received treatment since 2009, opined that Baker has "chronic headaches and back pain which began 10 years ago after a motor vehicle accident" and "symptoms of Major Depression, Recurrent, Severe 256.32, Panic Disorder with Agoraphobia, 300.21, and Post Traumatic Stress Disorder, 309.81. He has been taking Celexa 40 mg to treat his Depression and

Anxiety. This has brought very little relief for him." (R. 347). Brunson added that "Baker has not been able to work for almost 2 years due to the debilitating effects of his Depression and Anxiety," and that he "suffers from severe chronic daily fatigue, lack of interests, lack of motivation, decreased appetite and poor sleep. He feels worthless and hopeless." *Id*. Brunson attributed the depression to grief from the deaths of Baker's brother and father in 2004 and 2008, respectively. *Id*. In addition, Brunson opined that "[a]nother factor to consider is that the patient has low intelligence and only an 8th grade education. He worries about not earning money but has very poor coping skills for all the stressors in his life." *Id*. Finally, Brunson opined that "[b]ecause [Baker] has not been able to work at all for over 2 years, and his conditions do not indicate that he will be able to return to work fulltime in the future, I strongly recommend [Baker] for Social Security Disability Benefits." (R. 348).

    The latter opinion is, of course, the province of the Commissioner, as the ALJ aptly noted. (R. 21). Nonetheless, Brunson's venture into matters outside her expertise does not negate her clinical findings, especially where, as here, other evidence in the medical record is consistent with Brunson's opinion. For example, during a visit to Cullman Quality Health Care in March 2010, nurse practitioner Mary Elizabeth Barry reported that Baker "has the symptoms of a major

depressive episode. Triggered by brother[']s death a few years ago" and "[Baker] is experiencing anxious, fearful thoughts, compulsive thoughts or behaviors, irritable mood, diminished interest or pleasure, fatigue or loss of energy, panic attacks, poor concentration, indecisiveness, restlessness or sluggishness and sleep disturbance. Pertinent negatives include feelings of guilt or worthlessness, hallucinations, manic episodes, significant change in appetite (weight loss or gain greater than 5%) or thoughts of death or suicide." (R. 302). Barry diagnosed Baker with chronic depressive disorder, uncontrolled hypertension exacerbated by anxiety, and uncontrolled generalized anxiety disorder, and prescribed Baker Citalopram Hbr for depression, Vistaril for anxiety, and referred Baker to counseling for alcohol abuse. (R. 303-06).

Significantly, Dr. Eileen Gallagher, an osteopathic medical physician at Cullman Quality Health Care – and an acceptable medical source – treated Baker in August and September 2010 and diagnosed him with, among other things, recurrent severe major depression and generalized anxiety disorder. (R. 341-43). Dr. Gallagher treated Baker with anxiety and depression medications and reported that Baker has had depression symptoms for "2 years or more without significant break" and still has "depressed mood, diminished interest or pleasure, fatigue or loss of energy, feelings of guilt or worthlessness, panic attacks, poor

concentration, indecisiveness, restlessness or sluggishness and sleep disturbance" as well as "anxious, fearful thoughts" and "symptoms of a major depressive episode." (R. 341).

The medical record also included Baker's visits to the emergency room on several occasions for suicide attempts and anxiety related chest pain in 2009, 2010, and 2011. (R. 250, 258, 352-60, 361-68, 369, 372, 381-86). On one such visit, Cullman Regional Medical Center admitted Baker to the ICU for a drug overdose, suspected to be a suicide attempt, and an alcohol level of 0.363.[1] (R. 222). Apparently, Baker drank alcohol throughout the day and then took a handful of Ibuprofen. *Id*. The admitting physician, Dr. L. James Hoover, reported that Baker "apparently has once or twice taken some of his wife's blood pressure medicine and was sent by a judge to rehab for three months on one occasion for alcohol abuse...[Baker] has recently lost his job. He has child support that he cannot pay. His brother died about four [years] ago this time of year. His father died a year ago and he has been quite depressed because of all of that and apparently some other things." *Id*. Dr. Hoover diagnosed Baker with suicide gesture or attempt, alcohol abuse, and depression, and recommended Baker seek

---

[1] Although the chart entry stated "363," the court assumes that the physician intended to note a blood alcohol level of 0.363. *See* (R. 222).

case management or social worker assistance after discharge. (R. 223-24).

Based on this court's assessment, Drs. Hoover and Gallagher's opinions are consistent with clinical social worker Brunson's assessment. Likewise, even the ALJ's consultative and reviewing examiner's opinions are consistent with Brunson's. For example, Jack Bentley, Jr., Ph.D., who performed a consultative examination, opined that Baker's prognosis was guarded and diagnosed Baker with depressive disorder, chronic alcoholism, probable borderline to mild mental retardation, borderline features of personality disorder, hypertension, and S&P repair of laceration to lower right extremity. (R. 299). Dr. Bentley noted that Baker started experiencing psychiatric problems seven to eight years ago, was hospitalized three times in two years due to drug overdoses, has daily active suicidal thoughts but has not pursued any formal outpatient psychiatric services, and was on antidepressants. (R. 300). Dr. Bentley described Baker as cooperative but questioned his motivation, and stated that Baker could have performed Serial 3s from 100 and correctly spelled the word "world" had Baker been more motivated. (R. 299-300).

Melissa Jackson, Ph.D., who performed a Psychiatric Review Technique on Baker, reported that Baker "does seem to be having significant problems with concentration and attention and his social functioning is significantly impaired."

(R. 320-333).  Dr. Jackson relied heavily on Dr. Bentley's consultative examination results in rating Baker and opined that Baker "would be limited to simple tasks and to casual and infrequent contact with the public/co-workers," but that "[t]here is MDI that could reasonably cause the symptoms reported but the severity of functional limitations alleged is not consistent with current objective evidence on file. [Baker] is considered partially credible.  With psychotherapy and medication treatment he would likely improve within 6 to 12 months."  (R. 332).  Additionally, Dr. Jackson performed a Mental RFC Assessment in which she described Baker as only moderately limited in his ability to understand and remember detailed instructions, to carry out detailed instructions, to maintain attention and concentration for extended periods, to work in coordination with or proximity to others without being distracted by them, to complete a normal work-day and workweek without interruptions from psychologically based symptoms, to perform a consistent pace without an unreasonable number and length of rest periods, and to interact appropriately with the general public and to get along with his co-workers or peers.  (R. 334-336).

    As is evident, the medical record contains ample evidence of Baker's history of depression and anxiety, which supports the opinion by licensed clinical social worker Brunson.  While Brunson is not an "acceptable medical source" and

thus is not entitled to the treating physician rule, the ALJ should have nonetheless considered Brunson's opinion and outlined why he rejected Brunson's opinion, and which physicians' opinions he found more persuasive.  Moreover, because the ALJ failed to articulate which opinions and evidence he relied upon in determining Baker's RFC, the court finds that the RFC, and consequently, the disability determination, is not supported by substantial evidence.

> **B.** **Failure to properly consider Baker's depression and anxiety as "severe" impairments**

Baker also contends that the ALJ failed to properly consider his depression and anxiety as severe impairments, and that, even if the ALJ found they were non-severe, that pursuant to SSR 96-8p, the ALJ should have considered the impact of Baker's severe and non-severe impairments on his ability to work.  Doc. 8 at 10-11; (R. 12).  Based on these contentions, Baker asserts that the ALJ's decision is not based on substantial evidence.  *Id*. at 12.  The court agrees because of the ALJ's failure to fully discuss the medical evidence.  The only support the ALJ provided for finding that Baker did not have severe impairments of depression and anxiety was that "none of these impairments have been 'severe' for more than a few days at a time."  (R. 17).  However, as outlined in Section A, the medical evidence is replete with diagnoses from acceptable medical sources that at least deserve some mention to justify the ALJ's findings.  On **REMAND**, the ALJ is

charged to make a disability determination based on the entire medical record and to clearly articulate the evidence that supports his ultimate finding.

## VI.  Conclusion

Based on the foregoing, the court concludes that the ALJ's determination is not based on substantial evidence.  Therefore, the Commissioner's final decision is **REVERSED** and **REMANDED** for the ALJ to make a disability determination based on the medical record, and to consult additional physicians, as necessary, to assess Baker's condition.  Upon remand, the ALJ is charged with finding an RFC consistent with the medical evidence available to the ALJ such that Baker's impairments are properly assessed.  A separate order in accordance with the memorandum of decision will be entered.

   **Done** the 20th day of December, 2012.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE